# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 16, 2012 at Knoxville

## STATE OF TENNESSEE v. EDDIE L. READUS

**Appeal from the Circuit Court for Bedford County**
**No. 17127     Robert Crigler, Judge**

---

**No. M2011-01918-CCA-R3-CD - Filed September 17, 2012**

---

The defendant, Eddie L. Readus, was convicted by a Bedford County Circuit Court jury, in count one, of sale of less than .5 grams of cocaine and, in count two, of delivery of less than .5 grams of cocaine, Class C felonies, as well as, in count three, of possession of .5 grams or more of cocaine with intent to sell and, in count four, of possession of .5 grams or more of cocaine with intent to deliver, Class B felonies. The trial court merged count two into count one and count four into count three and sentenced the defendant to fifteen years on the two remaining convictions, to be served consecutively. On appeal, the defendant challenges the sufficiency of the convicting evidence and also argues that the doctrines of double jeopardy, multiplicity and merger prevented him from being sentenced separately on counts one and three. After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Roger Clay Parker, Shelbyville, Tennessee, for the appellant, Eddie L. Readus.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Charles Crawford, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On September 10, 2010, a confidential informant made a controlled drug buy of crack cocaine from the defendant at the home of Brenda Newman in Shelbyville, Tennessee. As

a result, the defendant was indicted for selling .5 grams or more of cocaine and delivering .5 grams or more of cocaine. Officers arrested the defendant later that day, finding in his possession an amount of powder cocaine, resulting in his also being indicted for possession of .5 grams or more of cocaine with intent to sell and possession of .5 grams or more of cocaine with intent to deliver.

According to the State's proof at trial, Deputy Tim Miller, of the Bedford County Sheriff's Department and 17th Judicial District Drug Task Force, received information in September 2010 that a lot of drug activity was taking place at Brenda Newman's residence. In particular, Deputy Miller was contacted by a paid confidential informant on September 10 who told him specifically that the defendant was selling crack cocaine out of Newman's residence. Deputy Miller, along with Agent Shane George of the Shelbyville Police Department and the 17th Judicial District Drug Task Force, met with the informant and arranged for her to conduct a controlled buy from the defendant. The officers searched the informant beforehand to ensure she did not have any contraband on her person and then issued her $100 with which to purchase the drugs. The informant was also outfitted with an electronic device to record her conversations.

Agent George drove the confidential informant to Newman's residence, with Deputy Miller following behind them. When they arrived in the area, the informant pointed out the defendant walking away from Newman's apartment, toward a market. However, by the time the officers moved into their respective surveillance positions, they saw the defendant walking back toward Newman's residence and entering the apartment.

Once the defendant was inside Newman's apartment, the informant exited Agent George's vehicle and walked toward Newman's apartment. As the informant neared the apartment, a man wearing a brown outfit approached her and they went into the apartment together. Inside, the informant made contact with the defendant and gave him $100 in exchange for a yellow bag containing "the dope," which she put in her bra. After being inside only "a relatively short period of time," the informant exited the apartment and returned to Agent George's vehicle, where she gave the bag of "dope" to Agent George. Deputy Miller, Agent George, and the informant then met in the parking lot of a nearby church, where Agent George handed Deputy Miller a small yellow bag containing crack cocaine that the informant had turned over to him. Deputy Miller secured the contraband and sent it to the Tennessee Bureau of Investigation ("TBI") Crime Laboratory for chemical analysis where it was determined to be .4 grams of crack cocaine. The officers searched and debriefed the informant who identified the defendant as the person from whom she purchased the crack cocaine.

Deputy Miller made the decision to arrest the defendant. Therefore, he and Agent George returned to Newman's address and conducted surveillance for approximately an hour and a half, noting there was "a ton of foot traffic" to and from Newman's residence. The officers entered Newman's apartment and arrested the defendant. When Agent George searched the defendant, he recovered a bag of powder cocaine, a small amount of marijuana, and two cell phones. He also recovered $411 cash, $100 of which was confirmed as the currency the informant used in making the controlled drug buy. The cocaine was packaged and put into evidence and sent to the TBI for testing, where it was determined to be powder cocaine in the weight of 1.5 grams. The defendant was <u>Mirandized</u>, waived his rights, and denied selling any drugs.

Following the conclusion of the proof, the jury convicted the defendant as charged, except in counts one and two it found that the amount he sold and delivered was less than .5 grams, not more than .5 grams. The defendant's conviction in count two was merged into count one, and his conviction in count four was merged into count three.

On a later date, the trial court conducted a sentencing hearing. The presentence report was admitted at the hearing in which it was detailed that the forty-three-year-old defendant had forty prior felony and misdemeanor convictions, including nine drug-related convictions, nine theft or property-related convictions, seven assault convictions, and six weapons convictions. It was also noted in the report that the defendant had numerous probation revocations, dropped out of high school in the tenth grade, had regularly used drugs since the age of nineteen, and had unverifiable and unstable employment history.

In reaching the defendant's sentence, the trial court found that the defendant had a long history of criminal convictions and criminal conduct and placed great weight on that factor. The court observed that the defendant's employment history was "nil." With regard to count one, the court noted that the only possible sentence for a career offender on a Class C felony was fifteen years at sixty percent. The court imposed a Range II sentence of fifteen years on the Class B felony in count three. The court ordered that the sentences be served consecutively, finding the defendant to be an offender whose record of criminal activity was extensive.

## ANALYSIS

On appeal, the defendant challenges the sufficiency of the convicting evidence and also argues that the doctrines of multiplicity, double jeopardy and merger prevented him from being sentenced separately on counts one and three.

# I. Sufficiency of the Evidence

The defendant challenges the sufficiency of the convicting evidence, arguing that the evidence against him was "highly circumstantial" and that "the likelihood existed that the informant . . . may have been in possession of the cocaine presented in court at trial and attributed to [him]."

When the sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). The same standard applies whether the finding of guilt is predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

A criminal offense may be established entirely by circumstantial evidence. State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010). It is for the jury to determine the weight to be given the circumstantial evidence and the extent to which the circumstances are consistent with the guilt of the defendant and inconsistent with his innocence. State v. James, 315 S.W.3d 440, 456 (Tenn. 2010). In addition, the State does not have the duty to exclude every other reasonable hypothesis except that of the defendant's guilt in order to obtain a conviction based solely on circumstantial evidence. See State v. Dorantes, 331 S.W.3d 370, 380-81 (Tenn. 2011) (adopting the federal standard of review for cases in which the evidence is entirely circumstantial).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given

to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

To sustain the defendant's conviction for sale of less than .5 grams of cocaine, the State had to show that the defendant sold said amount of cocaine and that he acted knowingly. Tenn. Code Ann. § 39-17-417(a)(3), (c)(2)(A). To sustain the defendant's conviction for possession of .5 grams or more of cocaine with the intent to sell, the State had to show that the defendant knowingly possessed .5 grams or more of cocaine with the intent to sell it. Id. § 39-17-417(a)(4), (c)(1). Tennessee Code Annotated section 39-17-419 provides in pertinent part: "It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing."

With regard to the defendant's conviction for the sale of cocaine in an amount less than .5 grams, in the light most favorable to the State, the evidence shows that the police learned that the defendant was participating in drug activity in Brenda Newman's apartment. The officers met with the confidential informant and arranged for her to make a controlled drug buy from the defendant. After searching the informant as well as male officers could without being inappropriate, the officers gave her $100 with which to purchase the drugs and observed her enter the target apartment. Inside, the informant gave the defendant the $100 in exchange for a yellow bag containing "the dope." According to the informant, she put the bag in her bra and then turned it over to the police upon their reconvening outside. The informant identified the defendant as the individual from whom she purchased the drugs. Deputy Miller and Agent George later recovered the $100 used in the controlled buy from the defendant. TBI Forensic Scientist Laura Adams testified that the substance purchased by the informant was crack cocaine in the amount of .4 grams.

The defendant disputes the sufficiency of the evidence because "the likelihood existed that the informant . . . may have been in possession of the cocaine presented in court at trial and attributed to [him]." However, the credibility of the informant's testimony that she purchased the drugs from the defendant was assessed by the jury as the trier of fact and is not for us to second-guess on appeal. Additionally, the officers' recovery from the

defendant's person of the exact currency that the informant used in making the buy supports the jury's determination.

With regard to the defendant's conviction for possession of .5 grams or more of cocaine with intent to sell, in the light most favorable to the State, the evidence shows that when the police arrested the defendant, they found powder cocaine, marijuana, two cell phones, and $411 on his person. The TBI forensic scientist determined that the substance recovered from the defendant was cocaine in the amount of 1.5 grams. Agent George testified that 1.5 grams of powder cocaine was considered a large amount. It was a reasonable inference for the jury to make given the sum of powder cocaine and cash recovered from the defendant that the defendant intended to sell the drugs. See, e.g., State v. Nelson, 275 S.W.3d 851, 867 (Tenn. Crim. App. 2008); State v. Maurice Currie, No. W2008-01090-CCA-R3-CD, 2009 WL 2998916, at *5 (Tenn. Crim. App. Sept. 21, 2009); State v. William Martin Frey, Jr., No. M2003-01996-CCA-R3-CD, 2004 WL 2266799, at *8-9 (Tenn. Crim. App. Oct. 6, 2004), perm. app. denied (Tenn. Feb. 28, 2005).

## II. Double Jeopardy

The defendant argues that the trial court erred in sentencing him on both counts one and three because the convictions arose out of the same series of events and were thus a single criminal offense. Accordingly, he asserts that "[t]he State is attempting to inflict punishment on [him] for separate charges based on the same facts" in violation of "the princip[les] of multiplicity, double jeopardy and merger." We note that the defendant, although stating that the trial court imposed an "excessive" sentence, clearly is not challenging the specific sentence imposed by the trial court but, instead, challenging that he was sentenced on both convictions rather than them being treated as one. As such, we confine our review to the defendant's issue instead of undertaking a typical sentencing review.

The Double Jeopardy Clause of the United States Constitution states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb[.]" U.S. Const. amend. V. Article I, section 10 of the Tennessee Constitution similarly provides "[t]hat no person shall, for the same offence, be twice put in jeopardy of life or limb." In State v. Watkins, 362 S.W.3d 530 (Tenn. 2012), our supreme court abandoned the State v. Denton, 938 S.W.2d 373 (Tenn. 1996), four-factor test previously employed by Tennessee courts in determining whether dual convictions violate the prohibition against double jeopardy. Instead, the court adopted the same elements test enunciated by the United States Supreme Court in Blockburger v. United States, 284 U.S. 299, 304 (1932). Under the Blockburger test, the threshold inquiry is whether the defendant's convictions arose from the same act or transgression. Watkins, 362 S.W.3d at 545. If the convictions do not arise

-6-

from the same act or transgression, the state and federal prohibitions against double jeopardy are not implicated, and the inquiry ends. Id.

If, however, the convictions arose from the same act or transgression, the court must then determine whether the legislature intended to allow the offenses to be punished separately. Id. at 556. When the legislature has not clearly expressed its intent either to prevent or to preclude the dual convictions, the court must examine the statutes to determine whether the crimes constitute the same offense. Id. at 557. "The court makes this determination by examining statutory elements of the offenses in the abstract, rather than the particular facts of the case." State v. Cross, 362 S.W.3d 512, 520 (Tenn. 2012) (citations omitted). "[I]f each offense includes an element that the other does not, the statutes do not define the 'same offense' for double jeopardy purposes," and courts "will presume that the Legislature intended to permit multiple punishments." Watkins, 362 S.W.3d at 557.

Upon review, we conclude that the defendant's convictions for the sale of cocaine and possession of cocaine and sentencing on those convictions do not violate double jeopardy. The initial inquiry of the Blockburger test is whether the defendant's convictions arose from the same act or transgression. Despite the defendant's best efforts at making his selling and possessing cocaine sound like the same act, such is not the case. The defendant sold .4 grams of crack cocaine to a confidential informant inside Brenda Newman's residence. Afterwards, the officers conducted surveillance on Newman's residence for a period of approximately an hour and a half before entering the residence to arrest the defendant. At the time of his arrest, the officers found 1.5 grams of powder cocaine on his person. Although crack cocaine is a form of cocaine, according to the testimony at trial, certain processes have to be done to powder cocaine and materials added to turn it into crack cocaine. Therefore, even if the defendant personally made the crack he sold to the confidential informant from his supply of powder cocaine, an assumption on which the record is silent, because of the processes involved, it was completely different transgressions for him to sell the crack cocaine and possess the powder cocaine for some later use. Accordingly, we conclude that the double jeopardy clause was not violated in this case. See State v. Jose D. Holmes, No. 02C01-9411-CR-00251, 1995 WL 695127, at *3-4 (Tenn. Crim. App. Nov. 22, 1995), perm. app. denied (Tenn. Apr. 8, 1996); State v. Walter Jones, No. 02C01-9307-CR-00155, 1994 WL 456347, at *2-3 (Tenn. Crim. App. Aug. 24, 1994), perm. app. denied (Tenn. Jan. 3, 1995).

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE